## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **TAMEKA BALDWIN, MARY CARY, JENNIFER COLBERT, EBONY HUGHES, JASON JENKINS, DESHANZA KING, CHERYL LANE, CRYSTAL LANE, DEREK MCCARTY, MARANDA MCCULLOCH, ESTELLE PATT, THERESA RICKS, BRANDY WHITE, and JEWEL WILLIAMS** | § § § § § § § § § | |
| *Plaintiffs*, | § § | **CIVIL ACTION NO. 2:21-cv-154** |
| **v.** | § § | **JURY TRIAL DEMANDED** |
| **JAMES SKINNER BAKING COMPANY** | § § | |
| *Defendant.* | § § | |

### AMENDED COMPLAINT

1.      Plaintiffs Tameka Baldwin, Mary Cary, Jennifer Colbert, Ebony Hughes, Jason Jenkins, Deshanza King, Cheryl Lane, Crystal Lane, Derek McCarty, Maranda McCulloch, Estelle Patt, Theresa Ricks, Brandy White, and Jewel Williams (collectively "Plaintiffs"), by and through their attorneys, bring this action for damages and other legal and equitable relief from the violation of the laws proscribing retaliation and discrimination based on disability, sex, race, and color, stating the following as Plaintiffs' claims against The James Skinner Co., a Nebraska corporation, incorrectly named as James Skinner Baking Company ("Defendant" or "J. Skinner").[1] Plaintiffs demand a trial by jury.

### INTRODUCTION

2.      This is an action brought by Plaintiffs seeking damages from Defendant for acts of discrimination based on disability, sex, race, and color in addition to retaliation based on

---

[1] Defendant The James Skinner Co., a Nebraska corporation, was incorrectly named as James Skinner Baking Company in Plaintiffs' Original Complaint (ECF No. 1).

engagement in protected activity.  Defendant's acts of discrimination are in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*, the Civil Rights Act of 1886, as amended, 42 U.S.C. § 1981 *et seq.*; ("§ 1981"), the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*, and Title II of the Texas Labor Code ("TLC"), Tex. Lab. Code § 21.001 *et seq.*, and any other cause(s) of action that can be inferred from the facts set forth herein.

3.      Defendant J. Skinner is one of the largest family-owned bakeries in the United States.

4.      Defendant J. Skinner owns and operates a manufacturing plant located in Paris, Texas.

5.      Defendant J. Skinner jointly employed Plaintiffs Cary, Williams, King, Hughes, McCulloch, and Crystal Lane with CorTech International AR LLC, a staffing agency headquartered in Atlanta, Georgia.

6.      Defendant J. Skinner jointly employed Plaintiffs Patt and White with FirstStaff, Inc., a staffing agency headquartered in Little Rock, Arkansas.

7.      Plaintiffs all worked in Defendant J. Skinner's facility located in Paris, Texas.

8.      Plaintiffs allege that they are entitled to recover (i) back wages, (ii) front pay, (iii) benefits, (iv) compensatory damages, (v) punitive damages, (vi) interest, and (vi) attorneys' fees and costs, pursuant to Title VII, 42 U.S.C. § 2000e *et seq.* of the Civil Rights Act of 1964, as amended; Section 1981, 42 U.S.C. § 1981 *et. seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, the Texas Labor Code, and such other and further relief as this Court finds necessary and proper.

**AMENDED COMPLAINT**

**JURISDICTION AND VENUE**

9.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) 42 U.S.C. § 1981 *et seq.*, as amended and 42 U.S.C. § 1981a *et seq.*, as amended. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Venue is also proper in this Court pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

**PARTIES**

11.     Defendant The James Skinner Co., a Nebraska corporation, is a company specializing in the production and manufacturing of various baked goods. Defendant maintains its headquarters in Omaha, Nebraska with its principal production facility located in Paris, Texas.

12.     Plaintiff TAMEKA BALDWIN is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

**AMENDED COMPLAINT**

13.     Plaintiff MARY CARY is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

14.     Plaintiff JENNIFER COLBERT is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

15.     Plaintiff EBONY HUGHES is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

16.     Plaintiff JASON JENKINS is a person who has been aggrieved by Defendant's actions. He is and has been, at all relevant times, an African-American male citizen of the United States of America and is a resident of the State of Texas.

17.     Plaintiff DESHANZA KING is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

18.     Plaintiff CHERYL LANE is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

19.     Plaintiff CRYSTAL LANE is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

**AMENDED COMPLAINT**

20.     Plaintiff DEREK MCCARTY is a person who has been aggrieved by Defendant's actions. He is and has been, at all relevant times, an African-American male citizen of the United States of America and is a resident of the State of Texas.

21.     Plaintiff MARANDA MCCULLOCH is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

22.     Plaintiff ESTELLE PATT is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

23.     Plaintiff THERESA RICKS is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

24.     Plaintiff BRANDY WHITE is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

25.     Plaintiff JEWEL WILLIAMS is a person who has been aggrieved by Defendant's actions. She is and has been, at all relevant times, an African-American female citizen of the United States of America and is a resident of the State of Texas.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

26.     Plaintiffs who have herein alleged claims pursuant to Title VII have timely filed complaints of discrimination with the Equal Employment Opportunity Commission ("EEOC").

27.     Plaintiffs who have herein alleged claims pursuant to Title VII received their Notice of Right to Sue letters from the EEOC prior to the filing of this Complaint.

**AMENDED COMPLAINT**

## STATEMENT OF FACTS

### I.      Facts Underlying Claims

28.      Defendant J. Skinner owns and operates a production facility located in Paris, Texas.

29.      Upon information and belief, the Company is considered one of the largest family-owned bakeries in the United States, with more than 500 employees between their two (2) production facilities in Omaha, Nebraska and Paris, Texas.

30.      Throughout the relevant time period, Defendants employed Plaintiffs at the Paris, Texas production facility.

31.      Throughout the relevant time period, Black employees have suffered discrimination in the terms and conditions of their employment, faced disparate treatment, and been subjected to a hostile work environment at the Company's Paris, Texas facility.

32.      The Defendant has created and sustained an environment in which Black employees are demeaned, discouraged, and excluded from the benefits and opportunities available to their similarly situated White counterparts.

33.      Black employees are subjected to disparate discipline, unequal application of company policy, and unlawful termination.

34.       For example, they do not receive the proper training necessary to effectively perform their positions when they are hired. This results in reprimands, write ups, and ultimately restricts their abilities to be promoted into higher paying positions.

35.      As such, many Black employees are denied the opportunity for advancement at the Company from the moment of hire.

36.     Further, Black employees who sustain injuries at work or are otherwise in need of reasonable accommodations in relation to their disabilities are unfairly denied in comparison to similarly situated White employees.

37.     Black employees are also subjected to a racially charged hostile work environment. They are regularly subjected to demeaning, humiliating and threatening language in the workplace.

38.     For example, they are subjected to racial graffiti in the bathrooms, and hear derogatory language such as "nigger" on the production floor.

39.     Moreover, Black women are objectified and sexually harassed by their co-workers and supervisors on account of their gender, including being subjected to unwanted touching and repeated comments about their bodies and simulated sex acts in the workplace.

40.     Defendants knew or should have known of the hostile and disparate conditions under which Plaintiffs worked.

41.     Despite repeated complaints about the discriminatory and hostile work environment, management failed to adequately address these complaints, and in some cases have retaliated against certain Plaintiffs for engaging in protected activity.

## II.     Facts Specific to Individual Plaintiffs

### Tameka Baldwin

42.     Plaintiff Tameka Baldwin worked for Defendant in or around October 2017 and was employed until in or around May 2019 as a machine operator.

43.     From the beginning of her employment, Plaintiff Baldwin worked as a machine operator without the job title. As a result, she did not receive the benefits of those in the machine operator position, including paid sick time and vacation time. It was not until January 2019 that Plaintiff Baldwin was provided with those benefits.

**AMENDED COMPLAINT**

44.     Upon information and belief, White employees were not subjected to the same treatment.

45.     In addition, despite becoming a permanent employee in March 2018, Plaintiff Baldwin was not provided a set shift schedule until January 2019.

46.     Plaintiff Baldwin witnessed multiple White employees immediately receive a set shift schedule when they became permanent full-time employees.

47.     As a result of the height of the machine Plaintiff Baldwin was assigned, she requested a stool to be better able to reach the machine. Her request was denied despite her White co-workers working on similar machines being routinely provided with stools.

48.     As a result, in November 2017, Plaintiff Baldwin suffered a knee injury at work while trying to reach the machine.

49.     Following her injury, her doctor provided a medical note that stated she should not climb at work. Despite this, she was still not provided with a stool by her employer or transferred to a role that did not require such strenuous movement.

50.     In July 2018, Plaintiff Baldwin was then electrocuted at work after her arm hit a live wire. She immediately reported the incident to her Supervisor and was taken to Human Resources.

51.     While with Human Resources, she was told that despite her electrocution, if she left work early, she would be written up. As a result, she reported back to her workstation despite being in a great deal of pain.

52.     The Defendant then refused to complete an incident report for the incident despite Plaintiff Baldwin's request.

**AMENDED COMPLAINT**

53.     Approximately five (5) hours following her injury, Plaintiff Baldwin was allowed to leave work. Notably, one week prior to her electrocution, a White employee at the Company was also electrocuted. The employee was allowed to leave work immediately following the injury without any similar threat and given three (3) days to recover from her injury.

54.     In September 2018, Plaintiff Baldwin sustained second degree burns from a machine at work. She was burned by a hot rod on a machine used to seal packages closed.

55.     Following her injury, she was sent to the Company doctor. Although her burns were severe, she was still required to return to work under the threat of being written up if she refused. Meanwhile, she was witnessed White employees who sustained similar burn injuries – sometimes even less serious – be accommodated fairly.

56.     In addition, Plaintiff Baldwin routinely witnessed racially hostile graffiti in the locker room bathroom, including the word "nigger" and a drawing of one white circle and black circle with the black circle crossed out.

**Mary Cary**

57.     Plaintiff Mary Cary began working for Defendant through temporary agency, CorTech International, in 2013. She was hired as a permanent employee by Defendant in or around May 2014 as a general production worker.

58.     After working for the Defendant for more than one (1) year, Plaintiff Cary was given a Machine Operator position. Upon information and belief, at that time, she was one of three (3) Black employees in that role.

59.     Prior to becoming a Machine Operator, Plaintiff Cary routinely witnessed similarly situated White employees received promotions to the Machine Operator position in far less time.

**AMENDED COMPLAINT**

60.     Throughout her employment, she was regularly reprimanded for minor infractions while similarly situated White employees were not subjected to the same scrutiny.

61.     For example, on one occasion her machine shut down and she was unable to remember the code to turn it back on. Her supervisor screamed at her and suspended her for three (3) days without pay. Meanwhile when a White Machine Operator forgot the machine code four (4) times in one week, no consequences were given.

62.     Plaintiff Cary reported the disparate treatment to Human Resources, but upon information and belief no investigation was conducted.

63.     Plaintiff Cary was also subjected to racial slurs and derogatory language in the workplace. On one occasion she overheard a supervisor approach a White employee and ask, "Where is your nigger plant manager?" In addition, a lead employee repeatedly referred to Plaintiff Cary as "gal" despite her requests that he stop doing so.

### Jennifer Colbert

64.     Plaintiff Jennifer Colbert ("Colbert") was employed by Defendant as a Quality Control Supervisor from on or around August 8, 2019 to October 8, 2019.

65.     Plaintiff Colbert was recruited for the position and joined the Company with twelve (12) years of similar food industry experience. She first interviewed for the position over the phone with Director of Corporate Quality Assurance, Brian Robertson ("Mr. Robertson") and Human Resources Generalist, Johnni Tippit ("Ms. Tippit").

66.     Next, she was interviewed by Quality Assurance Manager Stacy Osbourne ("Ms. Osbourne"). Ms. Osbourne, a White female and the highest-ranking on-site Quality Assurance Manager, made her reluctance to hire Plaintiff Colbert apparent during the interview.

67.     Yet, as a result of Mr. Robertson's recommendation, Plaintiff Colbert was hired.

**AMENDED COMPLAINT**

68.     When she accepted the position, Plaintiff Colbert was informed that she would be supervising Lab Technicians in the Quality Assurance Department.

69.     Plaintiff Colbert was the only Black employee in the department.

70.     From the beginning of her employment, Plaintiff Colbert was refused a written job description and training despite multiple requests.

71.     Specifically, Plaintiff Colbert sought training and assistance from Ms. Robertson in order to effectively perform her job duties. However, Ms. Osbourne refused to provide any training or assistance. As a result, Plaintiff Colbert was forced to self-teach by observing the production floor.

72.     Plaintiff Colbert routinely witnessed Ms. Osbourne providing support and assistance to other team members.

73.     In particular, when a new Sanitation and Quality Assurance Manager was hired after Plaintiff Colbert, she routinely witnessed Ms. Osbourne train and assist him.

74.     Not surprisingly, despite her Supervisor title, Plaintiff Colbert was regularly disregarded by the team she supervised. When she would approach Lab Technicians to view their work, they would ignore her and act in an unprofessional manner.

75.     The behavior of her team made it difficult to perform her supervisory duties and although she complained to Ms. Osbourne, she was ignored.

76.     Shortly thereafter, Ms. Osbourne began assigning Plaintiff Colbert tasks typically delegated to Lab Technicians. For example, she was placed behind 500+ degree ovens for hours at a time in order to take data and placed on the production line when they were short staffed.

**AMENDED COMPLAINT**

77.     Plaintiff Colbert was the only supervisor forced to work behind a 500+ degree oven for hours at a time. When she asked to rotate the position with the technicians, they refused, with one White technician stating: "You can stand it."

78.     In addition to not receiving adequate training, Plaintiff Colbert was never invited to any management meetings. Due to this, she was not kept up to date on important departmental information. For example, she was never aware of her team members' schedules, including when they were absent due to vacation or illness.

79.     Indeed, on several occasions, Plaintiff Colbert was the only supervisor on the floor during management meetings because all other supervisors were invited to and in attendance at the meetings.

80.     Throughout her employment, Plaintiff Colbert witnessed a racially hostile drawing of a Black individual being urinated on, which was drawn onto a bathroom wall in the restroom located on the production floor. Specifically, the image included a drawing of a standard stick figure urinating on a stick figure filled in with Black marker.

81.     On October 8, 2019, Plaintiff Colbert was terminated. She was told she was not learning the position fast enough, despite the fact that she sought training and was denied on several occasions.

82.     At the time of her termination, Plaintiff Colbert had never received any verbal or written counseling.

**Ebony Hughes**

83.     Plaintiff Ebony Hughes ("Hughes") began working for Defendant through temporary staffing agency CorTech on or about July 5, 2016 until August 26, 2016. Plaintiff was employed as a general laborer for the Company.

**AMENDED COMPLAINT**

12

84.    Plaintiff Hughes was assigned a new male Supervisor, Todd Johnson ("Mr. Johnson") in August 2016. Mr. Johnson made inappropriate advances and explicit sexual comments on several occasions at work.

85.    For example, in addition to repeatedly commenting on her appearance, he also made comments such as "you ain't trying to give me no pussy" and "you ain't trying to fuck any of these niggers."

86.    On one occasion, he stood behind her as she was reaching for something and rubbed his erect penis on her buttocks.

87.    Mr. Johnson also asked for her phone number on several occasions. She repeatedly refused his inappropriate advances and asked him to stop his behavior; however, the harassment continued.

88.    Plaintiff Hughes then complained to the Company directly and spoke with the Plant Manager and several management personnel, but no corrective action was taken.

89.    On or about August 25, 2016, Plaintiff Hughes was approached by Mr. Johnson who once again made several sexually explicit comments. After asking him to stop, he told her "I got something for your ass." Plaintiff Hughes again complained about his sexual harassment.

90.    The following day Plaintiff Hughes was suddenly terminated without explanation in retaliation for making repeated complaints about the sexual harassment she endured.

**Jason Jenkins**

91.    Plaintiff Jason Jenkins ("Jenkins") was employed by Defendant as a general production worker from on or about August 5, 2017 until March 2018.

92.    After proving his ability to effectively perform in his role, Mr. Jenkins was promoted to a Mixer position. In addition to his promotion, he was also assigned the job duties of

**AMENDED COMPLAINT**

a Weigh-Up employee. Job duties of Weigh-Up included weighing and sorting different materials needed for the mix.

93.     Despite his promotion and additional duties, Plaintiff Jenkins never received a pay raise. He discussed a raise with his Supervisor on several occasions and also spoke with Human Resources Representative, Amy Riding ("Ms. Riding"). He was told a raise would be reflected on his next check.  It was not.

94.     Plaintiff Jenkins witnessed similarly situated White co-workers receive their pay raises immediately following their promotions.

95.     In addition to the disparate compensation, Plaintiff Jenkins also witnessed the word "nigger" written on the middle stall of a bathroom located in the hallway of the production floor. He promptly reported the racial slur to management. While the graffiti was painted over, it was done in such a manner that the slur remained visible.

96.     Plaintiff Jenkins was then suddenly terminated after requesting one day off from work. He immediately contacted his union representative, but he was unable to get his job back. Meanwhile, he routinely witnessed White employees request days off from work without such severe repercussions.

**<u>Deshanza King</u>**

97.     Plaintiff Deshanza King ("King") began working for Defendant through temporary staffing agency CorTech in June 2013 until in or around November 2014. Plaintiff was hired as a Machine Operator.

98.     Plaintiff King was subjected to racial slurs and inappropriate sexual comments at work.  For example, Supervisor Lance Tate ("Mr. Tate"), a White male, made several racially and sexually offensive comments to Plaintiff.

**AMENDED COMPLAINT**

99.     On one occasion, Mr. Tate commented "I heard all black women give good sexual favors." On another occasion, he commented that black women perform oral sex well. In addition, he frequently referred to Plaintiff King as a "bitch."

100.    Plaintiff King also witnessed the word "nigger" written on the bathroom on the production floor and the hallway leading to the breakroom. She complained to Human Resources to no avail.

101.    In November 2014 Plaintiff King requested accommodations due to her pregnancy from her Supervisors Justin Franklin ("Mr. Franklin"), Roger Corn ("Mr. Corn"), and Mr. Tate. At the time she was three (3) months pregnant. She specifically requested that she no longer be required to lift heavy pans.

102.    Plaintiff King was told by Lead Manager Corey Mosley ("Mr. Mosley") that Mr. Tate denied her accommodation. According to Mr. Tate, she could not remain employed by the Company if she was unable to lift pans and they would not accommodate her during her pregnancy.

103.    As such, Plaintiff King continued to lift pans and engage in other strenuous activity throughout the duration of her pregnancy.

104.    In February 2015 Plaintiff King went into premature labor while at work. She was forced to take herself to the hospital herself after Mr. Tate refused to allow co-workers to assist her.

105.    Plaintiff King was then approved for leave following the birth of her premature child. In October 2015, she returned to work at the Company. However, one week after her return she was removed from the schedule. She was told that she was now an "on call" employee and would be scheduled on an as-needed basis without a set schedule.

**AMENDED COMPLAINT**

106.   Plaintiff King called in every single week to see if she had been assigned any shifts for the upcoming week until May 2016.

107.   Yet, after being demoted to an "on call" employee after giving birth, Plaintiff King was never again scheduled for a shift.

108.   Plaintiff King was a skilled machine operator with a decade of prior experience. She had never received any verbal or written warnings about her work performance.

## Cheryl Lane

109.   Plaintiff Cheryl Lane ("Plaintiff Cheryl Lane") began working for Defendant in or around September 26, 2016 until around May 2019.

110.   Plaintiff was first employed as a Packer and then as a Machine Operator for the Company.

111.   As a Packer, Plaintiff Lane was often placed to work in less favorable production lines. For example, she was frequently placed in the de-panning line, which included heavy lifting and labor intensive work.

112.   Additionally, Plaintiff did not receive the training afforded to her similarly situated White counterparts. Instead of the required three (3) weeks of training, she only received one (1) day of training each time. As a result, she was forced to learn each role herself.

113.   In fact, Plaintiff Lane was forced to teach herself how to properly put together boxes and package various baked goods by watching other employees.

114.   As a Machine Operator it was more challenging to learn by watching other employees because the machines were complex and operating them involved various measurements and steps.

**AMENDED COMPLAINT**

115.    She requested training and assistance on several occasions from Supervisors and Leads but was told to "read directions" and that she could "watch and learn." Yet, she regularly witnessed her White counterparts receive training and assistance as needed.

116.    On one occasion when a Lead offered her assistance, a Supervisor stepped in and told him to stop because she needed to learn by herself.

117.    In addition, Plaintiff Lane was frequently subjected to disparaging comments and remarks regarding her age at work. White employee, Bradley Reed ("Mr. Reed"), specifically targeted her despite numerous other White employees being a similar age.

118.    Mr. Reed repeatedly told her she was too old to be working on the production floor. He commented "Why are you here?" she was "moving slow" and that she "should be sitting in a wheelchair drawing disability."

119.    At the time Mr. Reed made these comments, Plaintiff Lane was approximately fifty-six (56) years old.

120.    Supervisor Shanette Matthews ("Ms. Matthews") also made inappropriate comments to Plaintiff Lane regarding her age.

121.    On several occasions while Plaintiff Lane was working on the production floor Ms. Matthews would approach her and say "Why are you moving so slow?" and "are you old?" Ms. Matthews did not treat White employees of a similar age in the same manner.

122.    In June 2018, Plaintiff Lane was cursed out by a male Lead on the production floor. She was working on a machine which he previously told her was not appropriate for women, and stated "Bitch I told you this is not a woman's job."

123.    She reported the male Lead employee to her Union Representative Mr. Royce, however the employee did not face any corrective action and continued to work at the company.

**AMENDED COMPLAINT**

124.     Around December 2018, Plaintiff Lane sustained an injury to her face while at work when she was hit in the head with a door.

125.     As a result of her injury, she began experiencing intense and frequent headaches. She immediately reported to the Supervisor and a Lead employee who ignored her concerns and told her the headaches were a result of stress and not the door hitting her in the head.

126.     Plaintiff Lane then reported the injury to Human Resources, who took a picture of the bruise and knots on her head from the injury. The following day she was sent home early from work due being unstable on her feet.

127.     In May 2019, Plaintiff Lane was terminated after Ms. Matthews wrongfully accused her of cursing at her on the production floor.

128.     Although she attempted to explain to Human Resources that the accusation was false, she was terminated without any investigation. She was told to never re-apply with the Company again by Human Resources Representative Ms. Tippit.

### Crystal Lane

129.     Plaintiff Crystal Lane ("Lane") began working for Defendant through temporary staffing agency CorTech in or around August 2016 until October 2016. Plaintiff was employed as a Packer for the Company.

130.     Plaintiff Lane was frequently subjected to inappropriate sexual comments at work. Specifically, Supervisor Todd Johnson ("Mr. Johnson") made several inappropriate comments to her starting from the beginning of her employment.

131.     On several occasions Mr. Johnson commented on Plaintiff Lane's appearance, including references to her body and clothing. He also made inappropriate physical advances, including brushing against her, touching her neck, and rubbing her back.

**AMENDED COMPLAINT**

132.     Despite Plaintiff Lane's several requests for him to stop, Mr. Johnson's behavior continued. When she would complain, he would taunt her and walk away laughing.

133.     In October 2016, Plaintiff Lane reported Mr. Johnson to Human Resources after he brushed his groin against her as he stood behind her.

134.     Following her complaint, no corrective action was taken, and Mr. Johnson continued to work.

135.     Almost immediately thereafter, Plaintiff Lane was demoted to an "on-call" employee status and was no longer scheduled to work any shifts.

## Derek McCarty

136.     Plaintiff Derek McCarty ("Plaintiff McCarty") began working for Defendant as a Mixer in March 2016 until in or around May 15, 2018.

137.     In or around April 2018, Plaintiff McCarty was accused of losing a thermometer in a batch of dough. Although he did not actually lose the thermometer, his supervisor issued him a write-up and searched his locker. Plaintiff McCarty witnessed a White employee lose a thermometer who has not disciplined or subjected to a locker search.

138.     On or around May 5, 2018, Plaintiff McCarty was forced to scoop out old and hardened dough from a mixer. After other employees refused the task, a Supervisor ordered him to do it. While shoveling out the dough, he sustained an injury to his back.

139.     The following week Plaintiff McCarty reported his injury to his Supervisor as he was experiencing severe back pain. He was told that leaving work early would result in a point against him and directed to go speak to Ms. Riding in Human Resources.

140.     Plaintiff McCarty was reluctant to go to Human Resources because the previous year he was hospitalized and handed in the appropriate paperwork for a medical leave to Human

**AMENDED COMPLAINT**

Resources. However, he later discovered that paperwork was never submitted. When he questioned the Human Resources representative, she simply told him she never had the chance to submit it.

141.    Nonetheless, Plaintiff McCarty went to Human Resources to report his back injury and advised that he would go see his doctor.  After seeing his doctor, he was provided a doctor's note that advised he take the following day off from work as a result of his back injury.

142.    Immediately thereafter, Plaintiff McCarty contacted Human Resources to inform them he would be unable to come into work the next day in accordance with his doctor's order. However, he was not able to reach Human Resources so instead he reported it to his Supervisor.

143.    Upon returning to work, he was questioned about his absence by Human Resources. Despite explaining his doctor's order, providing her the requisite documentation, and informing her that he called both Human Resources and his supervisor, he was terminated the same day.

### Maranda McCulloch

144.    Plaintiff Maranda McCulloch ("McCulloch") began working for Defendant through temporary staffing agency CorTech in or around July 2016 until September 2016. Plaintiff was employed as a Production Line worker for the Company.

145.    Plaintiff McCulloch was frequently subjected to inappropriate sexual comments at work. Specifically, her direct Supervisor, Todd Johnson ("Mr. Johnson") made several inappropriate sexual comments to her starting from the beginning of her employment.

146.    He frequently commented on her appearance and clothing, saying "Oh you're beautiful" and "Your jeans are too tight." He would repeatedly ask her to spend time with him outside of work.

**AMENDED COMPLAINT**

147.     On more than one occasion, Mr. Johnson would brush up against her from behind and rub his genitals against her. When she asked him to stop, he would become angry, hostile and threatening.

148.     Around September 2016, Plaintiff McCulloch reported her Supervisor's behavior to her line leader, Keith Doolittle ("Mr. Doolittle"). Mr. Doolittle informed Plaintiff McCulloch that there was nothing he could do to help her and that she had to report it directly to Human Resources.

149.     However, later that same day, while waiting to be picked up from work, Mr. Johnson came running outside screaming at her and threatened her job, clearly indicating that Mr. Doolittle informed him that Plaintiff McCulloch complained about the harassment.

150.     Within a few days of reporting sexual harassment to the Company, Plaintiff McCulloch was suddenly terminated.

**<u>Estelle Patt</u>**

151.     Plaintiff Estelle Patt ("Plaintiff Patt") began working for Defendant through temporary staffing agency FirstStaff in or around June 2017. Plaintiff was hired as a Machine Operator for the Company and became a permanent employee in or around September 2017.

152.     Plaintiff Patt was frequently subjected to inappropriate sexual comments at work. Specifically, her Supervisor Keith Doolittle ("Mr. Doolittle") made several inappropriate comments to her starting from the beginning of her employment.

153.     On one occasion he commented "she's gonna be my baby" and "The Lord is my shepherd and he knows what I want" in reference to Plaintiff Patt.

**AMENDED COMPLAINT**

154.    When Plaintiff Patt expressed that his comments made her extremely uncomfortable and asked him to stop, he would respond angrily. Mr. Doolittle's behavior continued and he threatened that she better not report him to Human Resources.

155.    Plaintiff Patt reported his sexual harassment to FirstStaff who notified the Company, but upon information and belief no corrective action was taken. Instead, Mr. Doolittle's behavior became even more hostile. He accused Plaintiff Patt of talking about him to other employees and threatened to have her terminated as a result.

156.    Additionally, Plaintiff Patt was reprimanded harshly in comparison to her similarly situated counterparts. For example, she was never trained on how to properly operate her assigned machine. As a result, when she would make minor mistakes she would be penalized.

157.    Meanwhile, White Machine Operators received adequate training for the same machine and did not face similar penalties. When she complained to White line lead, Larry, he told her she did not know what she was doing.

158.    Larry remained unwilling to properly assist Plaintiff Patt. On one occasion, she heard him comment "all he knows how to do is fry chicken" in reference to a Black man who came to inspect machines at the Company.

159.    Plaintiff Patt also witnessed the word "nigger" written on the hallway toward the breakroom. She reported it to Larry immediately.

160.    Plaintiff Patt left her employment at the Company in February 2018.

**Theresa Ricks**

161.    Plaintiff Theresa Ricks ("Ricks") began working for Defendant on or around July 25, 2013 until around June 2018. Plaintiff was employed as a Machine Operator for the Company.

**AMENDED COMPLAINT**

22

162.     In November 2016, Plaintiff Ricks fell in the break room at work and sustained an injury to her finger, hands, wrists, shoulder, and left knee. The fall also resulted in protruding discs in her neck, and as a result she was out on workers' compensation leave until March 2017.

163.     When she returned to work in March 2017, Ms. Ricks was assigned to clean tables in the Sanitation Department.

164.     In August 2017 Plaintiff Ricks sustained another injury to her neck and shoulder at work when a co-worker jokingly grabbed her. Following her second injury she was transferred to a less strenuous secretarial position.

165.     In February 2018 Plaintiff Ricks was informed by Human Resources Representative Amy Riding ("Ms. Riding") that she was being transferred back to the production floor because she no longer required light duty. The reassignment was abrupt as she had not received any update on her status from her doctor; however, according to Ms. Riding she was cleared to return to her previous position. Ms. Ricks did not want to lose her job so she obliged.

166.     However, approximately one week after she returned to the Machine Operator position, she sustained a third injury and was forced to go on leave again. During her leave, Ms. Ricks complied with all reporting procedures to ensure that the Company was updated about her status.

167.     In June 2018, Plaintiff Ricks discovered that she had been terminated by the Company. Plaintiff Ricks was told about her termination by her Supervisor, Keith Wise ("Mr. Wise"), who she ran into at a local store.

168.     The Company wholly failed to engage in the interactive process despite receiving notice about Plaintiff Ricks' medical status. At no point did the Company even inform her about her termination.

**AMENDED COMPLAINT**

169.    Following her termination, Plaintiff Ricks applied for unemployment. She was denied and told that the Company claimed she self-terminated her employment. However, after a thorough investigation it was found that she was terminated as a result of a medically verifiable illness.

## **Brandy White**

170.    Plaintiff Brandy White ("Brandy White") began working for Defendant in or around December 2017 through staffing agency FirstStaff as a Machine Operator. Plaintiff became a permanent employee in or around March 2018 and was employed until in or around July 2018.

171.    Plaintiff White was subjected to inappropriate sexual conduct at work. Specifically, a male team Lead, Bradley Reed ("Mr. Reed") placed a sticker on her breast when she approached him to discuss an issue. The offending employee previously showed pictures of his penis to two (2) other female employees in the workplace.

172.    Immediately following the incident, she attempted to report it to the Operations Manager, Brian. However, he said he was too busy and would follow up with her later. He did not follow up with her as stated.

173.    As a result, the next day Plaintiff White reported the incident to Human Resources. She was told that they would conduct an investigation into Mr. Reed's conduct.

174.    After a one-day investigation, she was contacted by Amy Riding, a Human Resources representative, and told, "I'm gonna need you to learn to work with him," in reference to the offending employee.

175.    Prior to her complaint, Plaintiff White was in training for a promotion to a Lead position at the Company. However, after reporting sexual harassment she no longer received training for the position.

**AMENDED COMPLAINT**

## Jewel Williams

176.    Plaintiff Jewel Williams ("Williams") began working for Defendant through temporary staffing agency CorTech in or around December 2016. Plaintiff was hired as a Packer for the Company and became a permanent employee in or around November 2017.

177.    Upon her hire, Plaintiff Williams did not receive the adequate training necessary for her position. Although she requested training on several occasions, she was denied.

178.    As a result, she was forced to teach herself how to operate the machines. She witnessed similar situated White Machine Operators regularly received training.

179.    Plaintiff Williams was frequently subjected to inappropriate sexual comments at work. Specifically, White Lead Larry once told her that if she felt anything "poking her" it was a screwdriver and not him. On another occasion, while picking an item up from the floor he commented "what if I bite your leg?" Larry also commented on her appearance, saying she had "perky breasts."

180.    Plaintiff Williams reported the sexual harassment to Human Resources and the Union. After reporting the harassment, Larry approached her on the production floor and told her that the Union could not touch him and complaining was a waste of time.

181.    Immediately following his comments, she reported him to the Union once again; however, no corrective action was taken.

182.    Plaintiff Williams was also subjected to a hostile work environment and regularly harassed by Lead employee Keith Doolittle ("Mr. Doolittle"). Mr. Doolittle frequently screamed in the faces of female employees, including Plaintiff Williams. Additionally, he and Larry often threw items on the floor and forced female employees to pick them up.

**AMENDED COMPLAINT**

183.     After reporting him to Human Resources, his hostile treatment intensified. He faced no repercussions for his behavior.

184.     As a result, Plaintiff Williams and other female employees are afraid to report further acts of sexual harassment because despite numerous reports of sexual harassment, the Company repeatedly fails to take any corrective action.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Racially Hostile Work Environment as to Plaintiffs Tameka Baldwin, Mary Cary, Jennifer Colbert, Jason Jenkins, Estelle Patt, and Jewel Williams)

185.     Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

186.     The conduct alleged herein violates Title VII and 42 U.S.C. § 2000 *et. seq.* as Defendant has engaged in racial and/or color harassment and has created, maintained and condoned a hostile work environment with respect to Plaintiffs named herein who have asserted such claims.

187.     The conduct alleged herein violates Title VII and 42 U.S.C. § 2000e *et. seq.* as Defendant has engaged in the practice of discrimination with respect to the terms and conditions of Plaintiffs' employment.

188.     The conduct Plaintiffs complained of was sufficiently severe or pervasive to alter the terms and conditions of his employment by creating an abusive working environment.

189.     The Defendant knew about the conduct and failed to implement reasonably prompt and appropriate corrective action.

190.     Plaintiffs' requests for relief are set forth below.

**AMENDED COMPLAINT**

**AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.**
**(Disparate Treatment as to Plaintiffs Tameka Baldwin, Mary Cary, Jennifer Colbert,**
**Jason Jenkins, Estelle Patt, and Jewel Williams)**

191.    Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

192.    Plaintiffs were subjected to discrimination on the basis of race and/or color and gender by Defendant.

193.    The conduct alleged herein violates Title VII and 42 U.S.C. § 2000e *et. seq.*  as Defendant has engaged in the practice of discrimination with respect to Plaintiffs named herein who have asserted such claims.

194.    Plaintiffs' requests for relief are set forth below.

**AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.**
**(Sexual Harassment as to Plaintiffs Ebony Hughes, Crystal Lane, Maranda McCulloch,**
**Estelle Patt, Brandy White, and Jewel Williams)**

195.    Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

196.    Plaintiffs were subjected to sexual harassment on account of their gender/sex.

197.    The conduct alleged herein violates Title VII and 42 U.S.C. § 2000e *et. seq.*  as Defendant has engaged in sexual harassment and has created, maintained and condoned a sexually hostile work environment with respect to Plaintiffs named herein who have asserted such claims.

198.    Plaintiffs' requests for relief are set forth below.

**AMENDED COMPLAINT**

**AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF**
**Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.**
**(Retaliation as to Plaintiffs Tameka Baldwin, Mary Cary, Jennifer Colbert, Ebony Hughes, Jason Jenkins, Deshanza King, Crystal Lane, Maranda McCulloch, Estelle Patt, Theresa Ricks, Brandy White, and Jewel Williams)**

199.   Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

200.   The conduct alleged herein violates Title VII and 42 U.S.C. § 2000e *et. seq.*   as Defendant has engaged in the practice of retaliation with respect to Plaintiffs named herein who have asserted such claims.

201.   Plaintiffs lodged complaints with Defendant and/or the EEOC regarding discrimination and/or the hostile work environment to which they were subjected, and as such engaged in protected activity under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

202.   Defendant retaliated against the Plaintiffs named herein who have asserted such claims for engaging in protected activity.

203.   Plaintiffs' request for relief are set forth below.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF**
**Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.***
**(Racially Hostile Work Environment as to All Plaintiffs)**

204.   Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

205.   Plaintiffs were subjected to discrimination on the basis of race and/or color by Defendant.

**AMENDED COMPLAINT**

206.     The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* as Defendant has engaged in the practice of discrimination with respect to Plaintiffs named herein who have asserted such claims.

207.     Defendant intentionally discriminated against Plaintiffs because of race and/or color in violation of Section 1981 with respect to the terms and conditions of their employment.

208.     Plaintiffs lodged complaints with Defendant and/or the EEOC regarding the discrimination to which they were subjected, and as such engaged in protected activity under § 1981.

209.     The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* as Defendant retaliated against the Plaintiffs for engaging in protected activity.

210.     Plaintiffs' requests for relief are set forth below.

### AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* (Disparate Treatment as All Plaintiffs)

211.     Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

212.     Plaintiffs were subjected to disparate treatment on the basis of race and/or color and gender by Defendant.

213.     The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.* as Defendant has engaged in the practice of disparate treatment with respect to Plaintiffs named herein who have asserted such claims.

214.     Defendant intentionally discriminated against Plaintiffs because of their race and/or color in violation of Section 1981.

**AMENDED COMPLAINT**

215.    Plaintiffs' requests for relief are set forth below.

## AS AND FOR AN SEVENTH CAUSE OF ACTION FOR A VIOLATION OF
### Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*
**(Retaliation as to All Plaintiffs)**

216.    Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

217.    Plaintiffs lodged complaints with Defendant and/or the EEOC regarding discrimination and/or the hostile work environment to which he was subjected to, and as such engaged in protected activity under § 1981. Defendant retaliated against the Plaintiffs named herein who have asserted such claims.

218.    The conduct alleged herein violates Section 1981 of the Civil Rights Act of 1866, 42 U.S.C. § 1981 et seq.

219.    Plaintiffs' requests for relief are set forth below

## AS AND FOR AN EIGHTH CAUSE OF ACTION FOR A VIOLATION OF
### American with Disabilites Act of 1990, as amended, 42 U.S.C. § 12101 et seq.
**(Failure to Accommodate as to Plaintiffs Tameka Baldwin, Deshanza King, Theresa Ricks)**

220.    Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

221.    Plaintiffs named herein who have asserted such claims are qualified individuals with a record of a disability within the meaning of 42 U.S.C.A. § 12111 of the ADA.

222.    Plaintiffs named herein who have asserted such claims are individuals with a disability within the meaning of the ADA.

223.    Plaintiffs named herein who have asserted such claims were regarded by the Defendant as persons with a disability.

**AMENDED COMPLAINT**

224.     Plaintiffs named herein who have asserted such claims were qualified for and could perform the essential function of his job at the time of their termination, with reasonable accommodations.

225.     Defendant discriminated against Plaintiffs named herein who have asserted such claims on the basis of disability in regards to the terms, conditions, and privileges of employment in violation of the ADA when Defendant denied a reasonable accommodation to Plaintiffs.

226.     Plaintiffs' requests for relief are set forth below

### AS AND FOR A NINTH CAUSE OF ACTION FOR A VIOLATION OF
### Chapter 21 of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq.*
### (Racially Hostile Work Environment as to Plaintiffs Tameka Baldwin, Mary Cary, Jennifer Colbert, Jason Jenkins, Estelle Patt, and Jewel Williams)

227.     Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

228.     Plaintiffs were subjected to discrimination on the basis of race and/or color by Defendant.

229.     Plaintiffs named herein who have asserted such claims were subjected to a hostile work environment on the basis of race and/or color by Defendant.

230.     The conduct alleged herein violates TLC § 21.001 *et seq.* as Defendant has engaged in racial and/or color harassment and has created, maintained and condoned a hostile work environment toward Plaintiffs.

231.     Plaintiffs' requests for relief are set forth below.

**AMENDED COMPLAINT**

**AS AND FOR A TENTH CAUSE OF ACTION FOR A VIOLATION OF**
**Chapter 21 of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq*.**
**(Racial Discrimination as to Plaintiffs Tameka Baldwin, Mary Cary, Jennifer Colbert,**
**Jason Jenkins, Estelle Patt, and Jewel Williams)**

232.    Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

233.    Plaintiffs named herein who have asserted such claims were subjected to discrimination on the basis of race and/or by Defendant.

234.    Defendant intentionally discriminated against Plaintiffs named herein who have asserted such claims because of their race and/or color in violation of the Tex. Lab. Code § 21.001 *et seq*.

235.    The conduct alleged herein violates TLC § 21.001 et seq. as Defendant has engaged in the practice of discrimination against Plaintiffs.

236.    Plaintiffs' requests for relief are set forth below.

**AS AND FOR AN ELEVENTH CAUSE OF ACTION FOR A VIOLATION OF**
**Chapter 21 of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq*.**
**(Retaliation as to Plaintiffs Tameka Baldwin, Mary Cary, Jennifer Colbert, Ebony Hughes,**
**Jason Jenkins, Deshanza King, Crystal Lane, Maranda McCulloch, Estelle Patt, Theresa**
**Ricks, Brandy White, and Jewel Williams)**

237.    Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

238.    Plaintiffs named herein who have asserted such claims lodged complaints with Defendants regarding the discrimination and/or sexual harassment to which they were subjected to, and, as such, engaged in protected activity under the TLC.

239.    The conduct alleged herein violates TLC § 21.001 *et seq*. as Defendant has engaged in the practice of retaliating against Plaintiffs named herein who have asserted such claims.

240.    Plaintiffs' requests for relief are set forth below.

**AMENDED COMPLAINT**

**AS AND FOR AN TWELTH CAUSE OF ACTION FOR A VIOLATION OF**
**Chapter 21 of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq*.**
**(Sexual Harassment as to Plaintiffs Ebony Hughes, Crystal Lane, Maranda McCulloch,**
**Estelle Patt, Brandy White, and Jewel Williams)**

241.    Plaintiffs are members of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

242.    Plaintiffs named herein who have asserted such claims were subjected to a sexually hostile work environment on account of their gender/sex.

243.    The conduct alleged herein violates TLC § 21.001 et seq. as the Defendant has engaged in sexual harassment and has created, maintained and condoned a hostile work environment towards Plaintiffs named herein who have asserted such claims.

244.    Plaintiffs' requests for relief are set forth below.

**AS AND FOR A THIRTEENTH CAUSE OF ACTION FOR A VIOLATION OF**
**Chapter 21 of the Texas Labor Code, Tex. Lab. Code § 21.001 *et seq*.**
**(Failure to Accommodate as to Plaintiffs Tameka Baldwin, Deshanza King, Theresa Ricks)**

245.    Plaintiffs are a member of a protected class and repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

246.    Plaintiffs named herein who have asserted such claims are qualified individuals within the meaning of TLC § 21.001 et seq.

247.    Plaintiffs named herein who have asserted such claims are individuals with a disability within the meaning of TLC § 21.001 et seq.

248.    Plaintiffs named herein who have asserted such claims were regarded by the Defendant as persons with a disability.

249.    Plaintiffs named herein who have asserted such claims were qualified for and could perform the essential function of their jobs at the time of their termination, with reasonable accommodations.

**AMENDED COMPLAINT**

250.    Defendant discriminated against Plaintiffs named herein who have asserted such claims on the basis of disability in regards to the terms, conditions, and privileges of employment in violation of TLC § 21.001 et seq. when Defendant denied reasonable accommodations to Plaintiffs.

251.    Plaintiffs' requests for relief are set forth below.

## DEMAND FOR JURY TRIAL

Plaintiffs demands a jury trial on all matters raised in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for the following relief:

A.    That the practices of the Defendant complained of herein be determined and adjudged to be in violation of the rights of the Plaintiffs under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 *et seq.*; and Title II of the Texas Labor Code, Tex. Lab. Code 21.001 *et seq.*, and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq.; prohibiting discrimination, harassment, and retaliation in employment;

B.    That judgment be entered in favor of Plaintiffs against Defendant for back pay (including interest or an appropriate inflation factor), front pay, benefits and all other amounts owed to Plaintiffs;

C.    That the Plaintiffs be awarded compensatory damages where available;

D.    That the Plaintiffs be awarded punitive damages;

E.    That the Plaintiffs be awarded pre and post judgment interest;

F.    That the Court award Plaintiffs attorneys' fees and costs associated with this matter, including but not limited to expert fees and costs;

**AMENDED COMPLAINT**

G.      That the Court retain jurisdiction over Defendant until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law;

Plaintiffs also seek injunctive relief, including but not limited to:

H.   Training on the subject of employment discrimination for all of Defendant's employees;

I.   Diversity training for all managers conducted by reputable outside vendors;

J.   Supervisory discipline up to and including termination for any supervisor who engages in unlawful discrimination and retaliation;

K.   Active monitoring of the work areas to ensure compliance with discrimination policies;

L.   Monitoring by the Court of a Federal Agency to ensure that Defendant complies with all injunctive relief; and

Plaintiffs further demand that they be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Dated: October 5, 2021                         Respectfully submitted,

*/s/ Jay D. Ellwanger*
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
**ELLWANGER LAW LLLP**
8310-1 N. Capital of Texas Hwy.
Suite 190
Austin, Texas  78731
Telephone: (737) 808-2260
Facsimile: (737) 808-2262

James A. Vagnini (*pro hac vice to be filed*)
N.Y. State Bar No. 2958130
jvagnini@vkvlawyers.com
Monica Hincken (*pro hac vice to be filed*)
N.Y. State Bar No. 5351804
mhincken@vkvlawyers.com

**AMENDED COMPLAINT**

**VALLI KANE & VAGNINI LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
Telephone: (516) 203-7180
Facsimile: (516) 706-0248


**COUNSEL FOR PLAINTIFFS**

**AMENDED COMPLAINT**

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2021, a true and correct copy of the above and foregoing document was served on all counsel of record via the Court's ECF system.

*/s/ Jay D. Ellwanger*
Jay D. Ellwanger

**AMENDED COMPLAINT**